UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 21, 2025

LETTER TO ALL COUNSEL OF RECORD

Re: *Victoria M. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
Civil No. 24-1113-CDA

Dear Counsel:

On April 17, 2024, Plaintiff Victoria M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; D. Md. Loc. R. 301. I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on April 3, 2017, alleging a disability onset date of March 3, 2017. Tr. 205-13. Plaintiff's claims were denied initially and on reconsideration. *Id.* at 97-101, 109-10. On May 16, 2019, an Administrative Law Judge ("ALJ") held a hearing. *Id.* at 38-63. Following the hearing, on June 12, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. *Id.* at 12-36. The Appeals Council ("AC") denied Plaintiff's request for review, *id.* at 1-6, so Plaintiff filed a complaint in this Court seeking review of the ALJ's decision, ECF 11, at 2. On July 23, 2021, Judge Coulson granted the Commissioner's consent motion to remand the case for further administrative proceedings. Tr. 1040-41. On April 4, 2022, the AC vacated the ALJ's decision and remanded Plaintiff's case for a new hearing. *Id.* at 1042-48. On April 6, 2023, an ALJ held a new hearing. *Id.* at 912-34. Following the hearing,

---

[1] Plaintiff filed this case against Martin O'Malley, the Acting Commissioner of Social Security, on April 17, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

on May 25, 2023, the ALJ again determined that Plaintiff was not disabled. *Id.* at 873-911. Because the AC did not assume jurisdiction over Plaintiff's case, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a); 20 C.F.R. § 416.1484(d); 20 C.F.R. § 404.984(d).

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engage[d] in substantial gainful activity since April 3, 2017, the application date." Tr. 878. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "migraines, depressive/bipolar disorder, anxiety with agoraphobia, posttraumatic stress disorder (PTSD), personality disorder, attention deficit hyperactivity disorder (ADHD)/attention deficit disorder (ADD), and schizophrenia/schizoaffective disorder." *Id.* at 879. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "sciatica, benzodiazepine use disorder, and eating disorders." *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 880. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: frequently balancing, stooping, kneeling, crouching, and crawling; occasionally climbing ladders, ropes, or scaffolds; frequent exposure to extreme heat, extreme cold, and humidity; frequent exposure to vibrations; occasional exposure to hazardous conditions, including unprotected heights and moving machinery; "moderate" noise exposure (defined in the SCO as business office with typewriters in use; department store, grocery store, light traffic, and fast food restaurant at off-hours); able to perform simple, routine tasks; only simple, work-related decisions with few workplace changes; no interaction with the general public; and occasional interaction with coworkers and supervisors.

*Id.* at 882. The ALJ determined that Plaintiff "is unable to perform any past relevant work" as a

*Victoria M. v. Bisignano*
Civil No. 24-1113-CDA
July 21, 2025
Page 3

Call Center Operator (DOT[3] #299.357-014), Therapy Aide (DOT #076.224-010), and Bartender (DOT #312.474-010), but could perform other jobs that existed in significant numbers in the national economy. *Id.* at 901-02. Therefore, the ALJ concluded that Plaintiff "has not been under a disability . . . since April 3, 2017, the date the application was filed." *Id.* at 903.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions from Dr. Howard Leizer and Dr. Aroon Suansilppongse. ECF 11, at 14-20. Plaintiff further argues that the RFC is not supported by substantial evidence because the ALJ failed to (i) adequately address Plaintiff's migraines; (ii) build an accurate and logical bridge between the evidence and RFC; (iii) explain how Plaintiff would remain on task for 20% of the workday; and (iv) adequately address Plaintiff's moderate concentration, pace, and production ("CPP") limitation. *Id.* at 6-14, 20-25. Defendant counters that the RFC is supported by substantial evidence because the ALJ conducted a thorough review of the record and properly analyzed the medical opinions. ECF 15, at 8-24. None of Plaintiff's arguments prevail.

   a. *The ALJ properly evaluated the medical opinions of Dr. Leizer and Dr. Suansilppongse.*

The Court finds that the ALJ properly evaluated the medical opinions of Dr. Leizer and Dr.

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Victoria M. v. Bisignano*
Civil No. 24-1113-CDA
July 21, 2025
Page 4

Suansilppongse.  An ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c).  The ALJ must "articulate . . . how persuasive [the ALJ] finds each medical opinion."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  Because "[s]upportability and consistency are the most important factors when considering the persuasiveness of medical opinions," an ALJ must "explain how [he] considered [these] factors."  *Id.*  Supportability and consistency "must be considered independently[.]"  *Carlos F. v. Kijakazi*, No. 22-2049-BAH, 2023 WL 3293086, at *3 (D. Md. May 5, 2023); *see also Duane H. v. Kijakazi*, No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors").

"Supportability generally refers to 'the objective medical evidence and supporting explanations provided by a medical source.'"  *Adrianna S.*, 2022 WL 112034, at *1 (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence."  *Carlos F.*, 2023 WL 3293086, at *3 (internal quotation marks and citation omitted); *see also Mary W. v. Comm'r of Soc. Sec.*, No. 20-5523, 2022 WL 202764, at *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of . . . opinions, the ALJ needed to evaluate what the [physicians] said they based their opinions on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency[.]").  Supportability is not considered independently when the ALJ only analyzes "the consistency of an opinion with other opinions from the . . . rest of the record[.]"  *Timeka M. v. Kijakazi*, No. 22-3194-BAH, 2023 WL 5804645, at *3 (D. Md. Sept. 6, 2023).  Instead, the ALJ "must assess the relevance of 'the objective medical evidence and supporting explanations presented by a medical source' to the ultimate finding advanced by that medical expert."  *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)).

"Consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources in the claim.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The more consistent the opinion is with the other evidence, the more persuasive the opinion is. *Ibid.*  Consistency is an "outward facing inquiry," *Valentine v. O'Malley*, No. 24-0141-DCC-TER, 2024 WL 4445255, at *4 (D.S.C. Sept. 12, 2024), that requires the ALJ "to evaluate a medical source's opinion in comparison to other evidence in the record," *Rosa M. v. Kijakazi*, No. 22-4494-BHH-MHC, 2023 WL 9101308, at *4 (D.S.C. Dec. 8, 2023).  In assessing consistency, the ALJ must consider whether the opinion is "consistent with evidence from sources *other* than [the source of the opinion]."  *Marie T. v. O'Malley*, No. 23-1320-CDA, 2024 WL 2114811, at *3 (D. Md. May 10, 2024) (emphasis in original).

First, the ALJ properly evaluated the medical opinion of Dr. Leizer.  The ALJ first analyzed supportability.  The ALJ found that in reaching his conclusion, Dr. Leizer "noted [Plaintiff]'s complaints at her consultative exam in 2017 and at regular checkups, including mood dysregulation, anger issues, anxiety, paranoia, poor sleep, social anxiety, mood swings, explosive anger, and suicidal ideation; her psychomotor activity, speech, and though deficits; her positive

response to medications over time and her July 2019 hospitalization." Tr. 895-96. The ALJ also observed that Dr. Leizer "had the chance to review some of [Plaintiff]'s treatment records[,]" and that the opinion was "generally supported . . . by references to [Plaintiff's] lack of allegations of physical issues and [] history of migraines with treatment of Topamax" and "with references to [Plaintiff]'s reported activities; mood, eye contact, or judgment deficits on exams; reported symptoms that included avoidance of others, anger issues, paranoia, mood swings, explosive anger, and suicidal ideation; and positive response to medications over time, despite one psychiatric hospitalization." *Id.* at 894, 896.

The ALJ then pivoted to consistency, finding parts of Dr. Leizer's opinion persuasive and unpersuasive because they were either "consistent with" or "not consistent with the overall objective medical evidence of record." *Id.* at 895-96. In fact, the ALJ found Dr. Leizer's opinion particularly persuasive because it was "more consistent with [Plaintiff]'s reports of poor response to stressors that had resulted in her brief hospitalization in July 2019." Tr. 896. Moreover, the citation in the ALJ's consistency analysis refers to documents from Dr. Ifeoluwa Adabonyan's treatment records, not Dr. Leizer. *See id.* Such citation reflects an appropriate comparison to other medical sources in the record. *See, e.g., Antwoin W. v. Dudek*, No. 24-0075-CDA, 2025 WL 949410, at *4 (D. Md. Mar. 28, 2025).

Second, the ALJ properly evaluated the medical opinion of Dr. Suansilppongse. The ALJ again articulated their supportability determination. The ALJ found that in reaching his finding, Dr. Suansilppongse "noted no new evidence for physical issues or updated activities of daily living" and "[Plaintiff]'s persistent anxiety and depressive symptoms; some mood, eye contact, and judgment deficits previously, but largely normal mental status exams; and positive response to treatment of medications." Tr. 894, 896. The ALJ also observed that Dr. Suansilppongse "had the chance to review some of [Plaintiff]'s treatment records[,]" and that the opinion was "generally supported . . . with references to [Plaintiff]'s reported activities; mood, eye contact, or judgment deficits on exams; reported symptoms that included avoidance of others, anger issues, paranoia, mood swings, explosive anger, and suicidal ideation; and positive response to medications over time, despite one psychiatric hospitalization." *Id.* at 896.

The ALJ analyzed consistency, too. The ALJ found parts of Dr. Suansilppongse's opinion persuasive and unpersuasive because they were either "consistent with" or "not consistent with the overall objective medical evidence of record." *Id.* at 895-96. Notably, the ALJ found Dr. Suansilppongse's opinion less persuasive than Dr. Leizer because Dr. Leizer's opinion was "more consistent with [Plaintiff]'s reports of poor response to stressors that had resulted in her brief hospitalization in July 2019." *Id.* at 896.

    b. *The ALJ adequately addressed Plaintiff's migraines.*

The Court will not accept Plaintiff's invitation to "re-weigh conflicting evidence" regarding her migraines or "substitute our judgment for that of" the ALJ. *Craig*, 76 F.3d at 589. In fact, the Court rejected Plaintiff's argument in *Andrew P. v. O'Malley*. There, the Court approved of the ALJ's analysis of the claimant's migraines, finding that the RFC adequately addressed his migraines and was supported by substantial evidence. No. 23-2443-CDA, 2024 WL

4288063, at *5 (D. Md. Sept. 25, 2024). "[T]he ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning six pages and citing to specific evidence in the record." *Id.* The Court further observed that as long as "'a claimant's allegations about their pain [are] not [] discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges he suffers.'" *Id.* (quoting *Craig*, 76 F.3d at 595).

The same reasoning in *Andrew P.* applies here. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning twenty pages—eight of which reference migraines—and citing to specific evidence in the record. *See* Tr. 883, 884-86, 890, 894, 897, 901. For example, the ALJ considered Plaintiff's testimony that she experienced "headaches throughout the period at issue with associated photophobia, phonophobia, nausea, vomiting, or dizziness; and her headaches were triggered by bright light lights and stress, but they were also worse with sunlight and heat." *Id.* at 885-86. The ALJ considered testimony that Plaintiff experienced "headaches 2-4 times weekly[, lasting] anywhere from 2-4 hours up to 3 days . . . and [] accompanied [by] nausea, vomiting, blurred vision, vertigo, pain with breathing, and noise sensitivity." *Id.* at 883. The ALJ observed that at a June 2017 neurology visit, Plaintiff "revealed bilateral occipito-nuchal tenderness and positive Tinel's signs bilaterally" and reported having "20 headache days monthly, with 6-7 days being severe and individual headaches lasting 1-2 days[.]" *Id.* at 884, 886. The ALJ recognized that Plaintiff often required medication to decrease the frequency of her migraines. *See id.* at 885-86.

Despite this evidence, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the migraine symptoms] are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 883. The ALJ observed that Plaintiff "had normal brain MRI and CT scan findings with a normal EEG" and "persistently had normal gait, reflexes, strength, cranial nerves, coordination, head signs, and neurological signs overall at primary care and at emergency room visits." *Id.* at 886. The ALJ noted Plaintiff's "positive response to conservative treatment of medications and recommendations to avoid triggers[.]" *Id.* The ALJ recognized that at the same June 2017 visit, Plaintiff "also had normal cranial nerves, mental status, sensation, reflexes, coordination, gait, tandem gait, and strength." *Id.* Weighing all this evidence, the ALJ determined that:

> [Plaintiff]'s persistent headache complaints with sensitivity to temperature changes and noise, as well as some accompanying dizziness; her normal brain diagnostic studies; her unremarkable physical exams, aside from tenderness or positive Tinel's signs; and some positive responsive to conservative treatment of medications and recommendations to avoid triggers, all support postural, temperature, humidity, vibration, hazard, and noise restrictions as assessed in the above [RFC].

*Id.* As in *Andrew P.*, the ALJ's analysis of Plaintiff's migraines here is supported by substantial evidence. The ALJ found persuasive a state agency medical opinion which considered Plaintiff's migraines and determined Plaintiff capable of meeting the RFC. *See*

Tr. 894-95; *see also Andrew P.*, 2024 WL 4288063, at *5. Finally, like in *Andrew P.*, Plaintiff "does not identify any relevant medical records or testimony that the ALJ failed to consider or that the ALJ failed to resolve any evidentiary contradictions." 2024 WL 4288063, at *5.

     *c.   The ALJ built an accurate and logical bridge between the evidence and RFC.*

A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). The RFC includes ten conclusions, finding that Plaintiff is limited to:

    (1) frequent balancing, stooping, kneeling, crouching, and crawling;

    (2) occasional climbing ladders, ropes, or scaffolds;

    (3) frequent exposure to extreme heat, extreme cold, and humidity;

    (4) frequent exposure to vibrations;

    (5) occasional exposure to hazardous conditions, including unprotected heights and moving machinery;

    (6) 'moderate' noise exposure (defined in the SCO as business office with typewriters in use; department store, grocery store, light traffic, and fast food restaurant at off-hours);

    (7) simple, routine tasks;

    (8) simple, work-related decisions with few workplace changes;

    (9) no interaction with the general public; and

    (10) occasional interaction with coworkers and supervisors.

Tr. 882 (cleaned up). The ALJ summarized Plaintiff's medical history across twenty pages, including relevant medical records, subjective testimony, and medical opinions. *Id.* at 882-901.

Here, each conclusion in the RFC is accompanied by a narrative discussion describing the evidence that supports it. The ALJ incorporated every limitation from the medical opinions of state agency medical and psychological consultants. Tr. 894-96; *see Vanesta H. v. Kijakazi*, No. 23-594-CDA, 2023 WL 8716943, at *4 (D. Md. Dec. 18, 2023) (finding that the ALJ's

incorporation in the RFC of limitations from medical opinions created an accurate and logical bridge between the evidence and the RFC). The ALJ opined that limitations (1), (2), (3), (4), (5), and (6) were supported by Plaintiff's "persistent headache complaints with sensitivity to temperature changes and noise, as well as some accompanying dizziness; her normal brain diagnostic studies; her unremarkable physical exams, aside from tenderness or positive Tinel's signs; and some positive response to conservative treatment of medications and recommendations to avoid triggers[.]" Tr. 886. The ALJ further opined that limitations (7), (8), (9), and (10) were supported by Plaintiff's "persistent mental complaints, including social anxiety, mood swings, self-isolation, flashbacks, low moods, mania, hallucinations, irritability, and poor response to stressors; mixed mental signs on exams -improved over time; and positive response to treatment of psychotropic medications, regular individual therapy, and one brief psychiatric hospitalization[.]" *Id.* at 894.

### d. The ALJ did not err by failing to explain Plaintiff's ability to stay on task.

The Court finds that the ALJ did not err by failing to explain Plaintiff's ability to stay on task. "[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018); *see also Adrienne P. v. Kijakazi,* No. BPG-22-358, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023) ("[A]n RFC determination implicitly contains a finding that [a] plaintiff is able to work an eight-hour work day[.]"). Moreover, "an ALJ is free to accept or reject restrictions included in hypothetical questions" posed to a vocational expert. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000).

"A narrative discussion regarding a claimant's ability to stay on task is required if the ALJ includes a specific off-task limitation in the RFC." *Antwoin W.*, 2025 WL 949410, at *7; *see April K. v. Kijakazi*, No. 21-1538-BAH, 2022 WL 2793048, at *5 (D. Md. July 15, 2022) (finding it unnecessary for the ALJ to narratively discuss the plaintiff's ability to stay on task because "the ALJ did not make a finding that [the p]laintiff would be off task for a particular period of time"). "Moreover, despite VE testimony regarding a hypothetical employer's tolerance for off-task time, the Court has afforded deference to an ALJ's decision not to include an off-task limitation in the RFC or otherwise address a claimant's ability to stay on task." *Antwoin W.*, 2025 WL 949410, at *7; *see Audrey L.*, No. 23-2502-CDA, 2024 WL 3905668, at *4 (D. Md. Aug. 22, 2024) ("[A]n ALJ does not err by failing to consider a [VE]'s testimony regarding time off-task."); *Kaylee J. v. Kijakazi*, No. 22-2653-BAH, 2023 WL 4027514, at *3 (D. Md. June 15, 2023) (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony "that being off task for more than nine percent of a workday would preclude work"); *Stacey F. v. Kijakazi*, No. 22-2362-BAH, 2023 WL 3932239, at *3 (D. Md. June 9, 2023) (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony that a hypothetical employer would not tolerate more than five percent time off task); *April K.*, 2022 WL 2793048, at *5 (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony that more than ten percent time off task would be work-preclusive).

*Victoria M. v. Bisignano*
Civil No. 24-1113-CDA
July 21, 2025
Page 9

Here, the ALJ did not err by failing to explain Plaintiff's ability to stay on task. Because the ALJ did not include a specific off-task limitation in the RFC, *see* Tr. 882, the ALJ was not required to narratively discuss Plaintiff's ability to stay on task. As in *Antwoin W.*, *Audrey L.*, *Kaylee J.*, *Stacey F.*, and *April K.*, the Court's conclusion is not altered by VE testimony that a twenty percent time off-task limitation is work-preclusive. Tr. 931.

In addition, Plaintiff fails to "argue that the presented limitations in the RFC were insufficient to account for her moderate CPP limitations." *Mona S. v. O'Malley*, No. 23-1392-CDA, 2024 WL 3937194, at *3 (D. Md. Aug. 26, 2024). And the ALJ assigned persuasive value to medical opinions that do not include an off-task limitation., including an opinion diagnosing a moderate CPP limitation but explaining that the limitation could be accommodated by the limitations included in the RFC. Tr. 895-96; *see Audrey L.*, 2024 WL 3905668, at *4; *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *3 (D. Md. Sept. 15, 2021) (citing *Sizemore v. Berryhill*, 878 F.3d 72, 80-82 (4th Cir. 2017)) (rejecting the claimant's argument that the ALJ failed to address their moderate CPP limitation in the RFC where "the ALJ heavily [relied on] two medical opinions in which the physicians . . . explained [that] the moderate [CPP] limitation could be accommodated by" the limitation included in the RFC).

  e. *The ALJ adequately addressed Plaintiff's moderate CPP limitation.*

When a claimant possesses a mental impairment, an ALJ must make " 'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

"[O]nce an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec*. *Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638 (citation omitted) (joining the Third, Seventh, Eighth, and Eleventh Circuits in holding "that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work"); *Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020).

An ALJ adequately accounts for a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion regarding those limitations and adopting the source's opined limitations into the RFC. *See Sizemore*, 878 F.3d at 80–81 (affirming an ALJ's decision where: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical

opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion).

Here, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 881. The ALJ then assigned persuasive value to state agency medical opinions regarding Plaintiff's moderate CPP limitation and adopted those sources' opined limitations into the RFC. *See* Tr 895-96; *see also Sizemore*, 878 F.3d at 80–81. For example, the ALJ found persuasive a February 2021 opinion assessing Plaintiff with a moderate CPP limitation and recommending that the ALJ adopt limitations (7), (8), (9), and (10) to address the CPP limitation. *See* Tr. 895. The ALJ also found persuasive a January 2022 opinion with similar findings. *See id.* at 896. The ALJ then adopted limitations (7), (8), (9), and (10) into the RFC. *See id.* at 882. Therefore, the Court finds that the ALJ adequately addressed Plaintiff's moderate CPP limitation.

\*   \*   \*

The ALJ's reliance on substantial evidence and a robust discussion of Plaintiff's record in assessing the RFC permits meaningful review for the reasons explained above. A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion. *See Laws*, 368 F.2d at 642. That being the case, Plaintiff's disagreements with the ALJ's conclusions are not enough to reverse the Commissioner's decision. Whether this Court would have agreed with Plaintiff or reached the same conclusions as the ALJ is not the question before the Court. Accordingly, remand is unwarranted.

## V.   CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge